IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

KENNETH ROBERTSON                                              PLAINTIFF

vs.                              CASE NO.  1:06CV108FRB

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                 DEFENDANT

**PLAINTIFF'S BRIEF**

**I.  BACKGROUND**

On April 28, 2004, Plaintiff applied for Supplemental Security Income payments alleging that he has been disabled since December 4, 2002. These claims were denied initially and on reconsideration, and a request for hearing was timely filed. The Administrative Laws Judge denied the claimant's applications and issued an Unfavorable Decision on February 24, 2006. Plaintiff requested a review of the Administrative Law Judge's decision by the Appeals Council, but this request was denied on June 22, 2006. Plaintiff then appealed his case to the United States District Court of the Eastern District of Missouri. No decision has been made on Plaintiff's case. Therefore, the decision of the Administrative Law Judge stands as the final decision of the Commissioner.

**II.  ISSUES PRESENTED**

1. **WHETHER THE SECRETARY'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

2. **WHETHER OR NOT THE ADMINISTRATIVE LAW JUDGE ERRED BY FAILING TO OBTAIN VOCATIONAL EXPERT TESTIMONY REGARDING PLAINTIFFS ABILITY TO PERFORM SUBSTANTIAL GAINFUL EMPLOYMENT IN SIGNIFICANT NUMBERS IN THE NATIONAL ECONOMY**

## III. STANDARD FOR JUDICIAL REVIEW

42 U.S.C. §405(g), provides for judicial review of a "final decision" of the Commissioner under Title II. Section 1531(c)(3) provides for judicial review to the same extent as the Commissioner's final determination under §205. The standard for review by the Federal District Court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. §405(g); **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed 842 (1971); **Johnson v. Chater**, 87 F.3d 1015, 1017 (8th Cir. 1996); **Andler v. Chater**, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of, and opposition to, the Commissioner's decision. **Universal Camera Corp. v. NLRB**, 340 U.S. 474, 488, 71 S.Ct. 456, 464-65, 95 L.Ed. 456 (1951); **Thomas v. Sullivan**, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." **Gavin v. Heckler**, 811 F.2d 1195, 1199, (8th Cir. 1987) (**citing Steadman v. Securities & Exchange Commission**, 450 U.S. 91, 99, 101 S.Ct. 999, 1006-07, 67 L.Ed 2d 69 (1981)). See also **Thompson v. Sullivan**, 928 F.2d at 277.

Substantial evidence means more than a scintilla. It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." **Richardson v. Perales**, 402 U.S. at 401, 91 S.Ct at 1427; **Jernigan v. Sullivan**, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the substantial-evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id.; **Clarke v. Bowen**, 843 F.2d 271, 272-73 (8th Cir. 1988). In addition, a substantial evidence review "calls for a careful review of the entire record ..., to determine whether the Secretary, acting through the Administrative Law Judge, has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." **Simms v. Sullivan**, 877 F.2d 1047 (D.C. Cir. 1989).

Moreover, "failing to apply the correct legal standards or to provide the reviewing court with the sufficient basis to determine that the correct legal principles have been followed is grounds for reversal." **Wiggins v. Schweiker,** 679 F.2d 1387, 1389 (11th Cir. 1981). **Accord v. Bowen**, 826 F.2d 1120, 1121 (D.C. Cir. 1987).

## IV. BURDEN OF PROOF
## AND
## SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving he or she is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). If the plaintiff establishes that he is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. **Griffin v. Bowen**, 856 F.2d 1150, 1153-54 (8th Cir. 1988); **McMillian v. Schweiker**, 697 F.2d 215, 220, 21 (8th Cir. 1983).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. The regulations, referred to generally as Medical-Vocational Guidelines, are codified in 20 C.F.R. §§404.1501, et seq. The five-step sequential evaluation process used by the Commissioner can be summarized as follows:

    (1)    Is the claimant working:

            Yes = not disabled
            No = go to next step

    (2)    Does the claimant have a severe impairment or a combination of impairments which significantly limits his/her ability to do basic work activities?

            No = not disabled
            Yes = go to next step

(3) Does the impairment meet or equal a listed impairment in Appendix 1?

>Yes = disabled
>No = go to next step

(4) Does the impairment prevent the claimant from doing past relevant work?

>No = not disabled
>Yes = go to next step where burden shifts to the Commissioner

(5) Does the impairment prevent the claimant from doing any other work?

>Yes = disabled
>No = not disabled.

## 1. THE ADMINISTRATIVE LAW JUDGE'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

The Social Security Act defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which an be expected to last for a continuous period of not less than twelve months . . ." 42 U.S.C. §423(d)(1)(A) (1988). In addition, an individual will be determined to be disabled "only if his impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful activity which exists in the national economy..." 42 U.S.C. §423(d)(2)(A) (1988).

After an individual establishes an impairment or a combination of impairments severe enough to preclude performing his or her former work the Secretary has the burden of demonstrating the existence of other forms of substantial gainful activity in the national economy that the individual can perform. **Meneses v. Secretary of HEW**, 442 F.2d 802, 806 (D.C. Cir. 1971); **Bryant v. Heckler**,

629 F.Supp. 1496, 1501(n)(11)(D.C. 1986).

The Secretary has implemented regulations instituting this procedure. In evaluating the Plaintiff's alleged disability, the Social Security Administration uses a sequential evaluation process. The five-step process is outlined in 20 CFR §404.1520 (DIV.), 416.945(b) through (f) (SSI 1992). The proper test for evaluating the credibility of subjective complaints is set forth in **Pulaski v. Heckler**, 739 F.2d 1320, 1321-1322, 751 F.2d 943, 948 (8th Cir. 1984) where the Court stated:

> "The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give the full consideration to all of the evidence presented relating to subjective complaints, including the Claimant's prior work record, and observation by third parties and treating and examining physicians relating to such matters as (1) the Claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) the precipitating and aggravating factor; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. the adjudicator is not free to accept or reject the Claimant's subjective complaints _solely_ on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole."

Under this sequential evaluation process, an individual seeking disability benefits must show at Step 1 that he or she is not performing substantial gainful activity; at Step 2, that he or she has a severe impairment; at Step 3, that he or she has an impairment or combination of impairments that meets or equals the listing in the regulations; at Step 4, that he or she cannot return to work done in the past. If the individual cannot do past work, then the process goes to Step 5 where the Secretary must show that there is another kind of work in the national economy that the Plaintiff can do if disability is to be denied. An individual can proceed to Step 4 even if he or she cannot meet Step 3 medical criteria. If he or she does not meet these criteria, benefits can be awarded without having to proceed any further.

Plaintiff's disabilities stem from a history of:

1. Two 11mm lesions in the right hemithorx: one partially calcified density in the anterior portion 8 cm below the level of the carina; the other adjacent to the posterior aspect of the right chest wall approximately 15 mm superior to the calcified lesion of the indeterminate etiology.   (T-109)

2. Hypertension-not well controlled (T-110)
3. Hyperlipidemia (T-110)
4. CAD (T-110)
5. Ischemic CMP (T-116)
6. Morbid Obesity (T-110)
7. Osteoarthritis (T-110)
8. Hepatitis C (T-110)
9. Lung nodule (T-110)
10. Chest x-rays reveals: several nodular densities both lungs, probably gradulomas (T-111)
11. HCV Ab positive (T-111)
12. Acute URI (T-121)
13. Myocardial infarction 1999 (T-128)
14. Chest pain (T-129)
15. Left ventricular systolic function, ejection fraction 67% (T-136)
16. Mild elevation of left ventricular end diastolic pressure compatible with reduced left ventricular compliance. (T-136)
17. Recurrent atypical chest pain, abnormal stress, echocardiogram with evidence of ischemia in the inferoapical distribution. (T-136)
18. Mild exertional dyspnea (T-136)
19. Abdominal Stress (T-140)
20. Sinus Bradycardia (T148)
21. Shortness of breath (T-149)
22. Markedly positive dobutamine stress echocardiogram clinically as well as echocardiographically. Minor atrial as well as ventricular ectopy with dobutamine stress. Post stress study demonstrates stress induced hypokinesis involving the mid and distal inferior wall extending to apiconferior junction and involving the distal interventricular septum and the apicoseptal junction. This study is compatible with stress induced ischemia involving the distal left anterior descending artery or mid and distal right coronary artery. (T-151)
23. Shortness of breath COPD by report, left foot pain, bilateral LE edema (T-154)
24. Limitation of motion in the cervical spine (T-156)
25. Pain at the extremes of motion in both knees and hips (T-156)
26. Frequent bi temporal headaches, some migrainous in nature (T-156)
27. Posturally dizzy (T-156)
28. Vision is variable; hearing is slightly diminished with tinnitus, epistaxis or dysphagia (T-156)
29. ROM Values: Cervical Spine: A) Lateral Flexion R-30° L-30° B) Flexion 45° C) Extension 45° D) Rotation L-45° R-45° (T-159)
30. EKG showed sinus bradycardia at the rate of 59 (T-160)
31. Numbness, associated with pain and edema (T-162)

The plaintiff was 50 years old at the time of the hearing with a tenth grade (limited) education and no specialized training. His past relevant work included self employment in the maintenance,

construction and remodeling industries.

The Administrative Law Judge held that the Plaintiff did not suffer an impairment of such severity as to meet the listing. The ALJ stated: "Although the undersigned finds, based on the medical evidence as summarized above, that the claimant has severe ischemic cardiomyopathy and degenerative joint disease, the undersigned finds that these severe impairments are not enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1, subpart P, Regulations No. 4. There is no evidence of severe mental impairment." (T-13)

The Administrative Law Judge stated the medical evidence does not document the existence of impairments that meet the requisite level of severity for an impairment under (20 CFR § 404.1501), et seq. He argues Plaintiff retains the Residual Functional Capacity to perform a wide range of light exertional work. For the purposes of the Administrative Law Judge's findings that the Plaintiff can perform a wide range of light exertional work, (20 CFR § 416.967), it is questionable as to what that involves.

In the instant case the process of evaluating the Plaintiff's disability should have reached step 5. At this step, the Administrative Law Judge must determine whether the individual's severe impairment precluded the Plaintiff from performing any other substantial gainful activity which exists in significant numbers in the national economy. If the determination is "yes," then the Plaintiff is disabled. (20 CFR § 416.945 (f) (1992). At this step the Social Security Administration must look at the interrelationship of medical and vocational factors in making determinations.

In his decision, the Administrative Law Judge states, " The claimant testified at the hearing that he does some routine household chores such as feeding his dogs, taking out his garbage, and shopping for groceries." (T-14)

Plaintiff's actual testimony at hearing included,

```
Q    I'd like to get some idea of your daily activities, what time you normally get
     up, what time you normally go to bed, and what you do in between.
A    I usually get up around 7:30.
Q    Okay.
A    And I take my medicine that the doctor prescribed for me to take. And then
```

| | |
|---|---|
| | I walk outside and feed the dogs, come back in, sit down and watch TV, take out the garbage, what little I can. If there's a whole bunch, Paula takes that our for me [INAUDIBLE] they she get to them. And that's about my day. |
| Q | You spend most of it watching TV? |
| A | Yeah. |
| Q | Okay. Any hobbies that you used to have that you no longer participate in? |
| A | Well the hobbies that I used to do was mechanic work. And, me piddling with that, little bit of [INAUDIBLE] work, which I cant do none of that now. |
| Q | How often, if at all, do you leave the house? |
| A | Im always there. |
| Q | Don't go anywhere at all? |
| A | 'Til Paula comes in. She takes the car and goes to work, and like we'll go to the store. I'll ride with her, you know. I have no other way to go. |
| Q | Do you, other than the store and the medical appointments, do you go any place else outside of the house? |
| A | No sir, I don't (T-200, T-201) |

The claimant's ability to engage in personal activities such as light housework and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity. See **Hogg v. Shalala,** 45 F.3rd 276 278 (8th Cir. 1995).

An applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See **Yawitz v. Weinberger**, 498 F .2d 956, 960 (8th Cir., 1974). what counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. **Douglas v. Bowen,** 836 F .2d 392, 396 (8th Cir. 1987) (quoting **McCoy v. Schwieker,** 683 F .2d 1138, 1147 (8th Cir. 1980), the District Court Judge states that "employers are concerned with substantial capacity, psychological stability and steady attendance....It is realistic to think that they would hire anyone with the impairments of this plaintiff." No. 84-591-A, slip op. at 2 (S.D. Iowa, Sept. 30, 1985)

The claimant testified at the hearing regarding his impairments,

| | |
|---|---|
| Q | Okay. What happened to you in '99 that caused you to not be able to work? |
| A | I got real dizzy and I had a light heart attack, that's when they carried me into the Emergency Room. That's what they said. |
| Q | I understand you were out in your yard, bend over, raise back up is when it all happened to you? |
| A | That's right. |
| Q | Is that right? And did they put you in the hospital? |

|   |   |
|---|---|
| A | Yes, sir, they did. |
| Q | How long for? |
| A | I was in there for about five or six days |
| Q | And what hospital was it? |
| A | At Creighton County Memorial West Memphis Hospital |
| Q | Okay. And did they do any procedures on you or any stents or surgeries or anything? |
| A | No. They kept me in there. And they put a, they run some stuff in me, did a stress test, run some dye through me, and said that they had unblocked on of them with some kind of dye stuff. |
| Q | Okay. |
| A | I had on block at that time. They kept me in there, and since I didn't have no Insurance, they couldn't afford to keep me. |
| Q | Did they put you on medication? |
| A | No, sir. |
| Q | All right. Well, are you not taking some Nitro now? |
| A | Now I am. |
| Q | When did you start doing that? |
| A | I've been taking them every since 2002. |
| Q | 2002? And who prescribed that for you? |
| A | Dr. Hearse [phonetic]. |
| Q | Where he's at? |
| A | William Hearse over there in Jonesboro Health. (T-190-191) |

Plaintiff testified as to his ling and breathing problems:

|   |   |
|---|---|
| Q | And what are they checking out, or what are they looking for? |
| A | They x-rayed me twice there. It [INAUDIBLE]. They seemed to think I got some maybe some cancer spots on my lung. |
| Q | All right. |
| A | They don't know. |
| Q | Are you having trouble with your lungs or breathing? |
| A | Yes, sir. |
| Q | What happens– |
| A | Short winded. (T-193) |

The Plaintiff testified as to his heart condition, chest pain, and limitations for walking:

|   |   |
|---|---|
| Q | All right What problems does your heart give you now? |
| A | Just tightness and a press and the blood flow to my legs, if I don't get enough blood down there, then they swell up, and I cant stand up very long at a time. |
| Q | All right. Does your, do you have chest pain? |
| A | Yes, sir. Sometimes I do and I have to take the Nitro for it. It helps. |
| Q | If you do something that exerts you, like walking or lifting or something like that, does it cause it, the pains to come on? |
| A | Yes, sir, it does. |
| Q | Do you have any idea of how far you would, could walk before you start |

|   |   |
|---|---|
| | having chest pains, if it was a flat surface? |
| A | Probably maybe 50 yards to a hundred yards. |
| Q | Okay. How often do you have to use the Nitro? |
| A | Only when I have chest pains. |
| Q | I understand that. But how often is that? |
| A | Oh. Let's see. Last time, it's been probably, I use them probably twice a month. |
| Q | All right. Is that a spray? |
| A | No. It's a pill. |
| Q | Pill? |
| A | It's, I've got it on me. |
| Q | Okay. Do you have any side effects after you take the– |
| A | Usually kind of get light-headed there for a minute, and have to kind of sit down. |
| Q | What about the dizziness and the light-headedness? Do you get that, I mean, I'm not talking about when you take the Nitro. But does that also come on to you like it did in 1999? |
| A | Yes it does. |
| Q | How often will that happen? |
| A | Just according if I'm moving around trying to, you know, if I'm bending over a lot, it really, I'll get real light-headed, get nauseated. (T-194-196) |
| Q | Okay. Now, understand when you were a kid you got some toes cut off by lawn mower? |
| A | Yes, sir I have. |
| Q | And, has that affected you back? |
| A | Yes, sir, it has. |
| Q | Okay. What's wrong with your back? |
| A | The lower part of my back, this disc over here, kind of causes me to walk at different, you know, I cant walk straight like a normal person because– |
| ALJ: | For the record, say that you were pointing to the left side of your back? |
| CLMT: | Yes. |
| ALJ: | Is that right? Okay. |
| CLMT: | They told me when I got older, I'd have problems. |

BY ATTORNEY:

|   |   |
|---|---|
| Q | Lifting weight cause you problems– |
| A | Yes it does. |
| Q | – with your back. About how much weight can you lift before it will hurt your back? |
| A | Probably five, ten pounds. |
| Q | All right. |
| A | Somewhere in that range. |
| Q | Do you take any kind of pain pills for your back? |
| A | Yes, sir, I do. |
| Q | What are you take? |

| | |
|---|---|
| A | It's, I got them written down, I can't - - |
| Q | Nuprin? |
| A | Yes, sir. |
| Q | Okay. And, how often you have to take those? |
| A | I take them every day, I take two. I'll take two a day if I hurt real bad one time. And I'll take, it supposed to take just one. But if I get to hurting, they told me I could take two of them. |
| Q | Has that gradually come on to you over the years? |
| A | Yes, sir. (T-196-197) |

The Plaintiff has been diagnosed with Hepatitis C and testified:

| | |
|---|---|
| Q | And what problems has Hepatitis C given you? |
| A | Give me weakness in my joints and muscles and stuff and my legs |
| Q | Are you contained? |
| A | Yes, sir. |
| Q | All right. Are you taking anything for the Hepatitis C yet? |
| A | Not yet. |
| Q | When did you find out about that? |
| A | It's probably been two, three weeks ago. (T-197-198) |

In his decision the Administrative Law Judge states, "The claimant has the following residual functional capacity for a wide range of light work. He is able to lift 10 pounds frequently and 20 pounds occasionally and sit, stand or walk at least six hours total in an eight hour work day. He is never able to climb ladders, ropes or scaffolds." (T-16) The Plaintiff cannot perform light work. The record reflects that the Plaintiff walks with a cane, and has shortness of breath upon minimal exertion.

Residual functional capacity is not the ability to merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.

The Plaintiff's limitations imposed by his impairments and accompanying symptoms of pain can be viewed as non-exertional limitations. **Thompson v. Brown**, 850 F.2d 346, (CA 8 Mo. 1988); **Tucker v. Heckler**, 776 F. 2d 793 (8th Cir. 1998.). Non-exertional limitations include difficulty in performing manipulative or postural functions such as lifting, bending, squatting, stooping, or crouching, due to all of his impairments. 20 C. F. R., Part 404, Subpart 2, Appendix Two, § 200.00

(e), 20 C. F. R. § 416.969 (a) (c) (C. I.). In this case, the Plaintiff is unable to perform squatting, stooping, bending, standing, or climbing, and cannot lift. Since the Plaintiffs limitations are a combination of exertional or non-exertional limitations, the regulations state the grids provide a framework for determining whether the Plaintiff is disabled. 20 C. F. R., Part 404, Subpart 2, Appendix 2, § 200.00 (e) (2), 20 C. F. R. § 416. 969 (a) (d) (1992). The rules should be used first, to determine if the individual is disabled based on the exertional impairments alone. If not, the SSA must determine how the non-exertional impairments further diminish the individual's residual functional capacity.

The Administrative Law Judge relied exclusively on the Medical Vocational Guidelines to find the Plaintiff "not disabled," stating:

> "Because the claimant's has the exertional capacity to perform substantially all of the requirements of light work, and considering the claimant's age, education, and work experience, a finding of "not disabled" is supported by application of Medical-Vocational Rule 202.11. The undersigned concludes there are jobs, existing in significant numbers in the national economy, which the claimant is able to perform. For all the foregoing reasons the Administrative Law Judges concludes that the claimant retains the capacity to adjust to work that exists in significant numbers n the national economy." (T-16)

The Administrative Law Judge states in his findings that,

> "The claimants capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled." (T-17)

Social Security Rulings states that the Medical -Vocational Guidelines may be used to direct an unfavorable decision only if the claimant has the exertional residual functional capacity to perform substantially all of the seven primary strength demands required by work at the given level of exertion and there are no nonexertional limitations.

The Administrative Law Judge did not discuss all of the Plaintiff's non-exertional limitations

such as obesity, Hepatitis C, shortness of breath, dyspnea, dizziness, headaches, numbness, swelling of legs and arthritis. In this case, Plaintiff's non-exertional impairments do significantly diminish his residual functional capacity to perform his past relevant work and therefore the Administrative Law Judge cannot rely on the guidelines to direct a conclusion of disabled or not disabled without resorting to vocational expert testimony since Plaintiff's non-exertional limitations do significantly affect his RFC.

Case law follows the proposition that the grids act only as a framework when the Plaintiff has non-exertional impairments. In addition, the Secretary must introduce expert vocational testimony or other evidence to prove that a significant number of jobs are available for the Plaintiff when the grids cannot be used to mandate a finding of "not disabled".

Case law requires this matter be remanded to determine whether Mr. Robertson's ability to engage in substantial gainful activity is diminished by his non-exertional impairments. The Administrative Law Judge's decision was not supported by substantial evidence and this case warrants remand.

**2. THE ADMINISTRATIVE LAW JUDGE ERRED BY FAILING TO OBTAIN VOCATIONAL TESTIMONY REGARDING PLAINTIFF'S ABILITY TO PERFORM SUBSTANTIA GAINFUL ACTIVITY WHICH EXISTS IN SIGNIFICANT NUMBERS IN THE NATIONAL ECONOMY.**

"An individual is determined to be disabled if his impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kid of substantial, gainful activity which exists in the National Economy . . ." 42 U.S.C. §423(d)(2)(A)(1988) (T-16) ." The Administrative Law Judge clearly states in his decision that the claimant is unable to perform any of his past relevant work, that he has a limited education, and he had no transferrable skills from any past relevant work. (T-16) Had a

vocational assessment been performed, Plaintiff could have shown there is no work in the national economy he could perform; and having met these criterias, benefits could be awarded without having to proceed any further.

Under this sequential evaluation process, when an individual reaches step four and he or she cannot return to work done in the past, the process proceeds to step five where the Secretary must show that there is another kind of work in the national economy that the Plaintiff can do.(20 CFR § 404.1520 (DIV.),416.945(b)through (f) (SSI 1992)). The Administrative Law Judge in this case stopped his evaluation at step four.

The Administrative Law Judge states,

"...with the residual functional capacity noted above, especially the inability to lift more than 20 pounds or to climb ladders, ropes, or scaffolds, the claimant is unable to return to his past work in the maintenance, construction, and remodeling industries." (T-15)

Plaintiff has demonstrated his inability to perform his past relevant work and clearly this Court had the burden to come forward with vocational evidence demonstrating what other substantial, gainful work the Plaintiff could perform. The Administrative Law Judge failed to provide other evidence such as vocational testimony to determine whether the Plaintiff's severe impairment precluded his from performing other substantial gainful activity which exists in significant number in the national economy. At this point in the case, the Administrative Law Judge must look at the interrelationship of medical and vocational factors in making such a determination. For purposes of the ALJ's findings that Plaintiff can perform his past work, is questionable as to what it involves.

Because Plaintiff suffers from disability and limitations associated with his degenerative disc disease which affects his ability to sit, stand and walk, etc, and his ischemia cardiomyopathy , it was imperative that a V.E. address this. Without a V.E. present to testify, the vocational profile performed by the SSA is inadequate and cannot be used to direct a finding of not disabled.

The Administrative Law Judge failed to undergo a full analysis of all of Plaintiff's disabilities. A vocational expert should have been present to testify, especially in this case. Hypothetical

questions should have been posed to a vocational expert.

Absent a vocational expert present, the Administrative Law Judge's findings that the Plaintiff could perform light exertional work was not based on substantial evidence. The Secretary's decision should be reversed and remanded for further finding after analysis of the evidence.

## **CONCLUSION**

The foregoing demonstrates Plaintiff has suffered disabling impairments since December 4, 2002. The ALJ in this case failed to base his findings upon substantial evidence outlining findings which were contrary to the evidence which has been pointed out here and above. Moreover, the administrative record clearly shows that Plaintiff suffers from numerous impairments, which in combination with his age, and past work experience, have rendered him physically disabled within the meaning of the Social Security Act. Accordingly. This Court should reverse the Secretary's decision and remand this case to the Secretary to award Plaintiff benefits from the onset date of his disability.

    Respectfully submitted,

    David Throesch
    Attorney at Law
    210 E. Everett Street
    Pocahontas, AR 72455

By   /s/ David Throesch
    **DAVID THROESCH (#76130)**

# CERTIFICATE OF SERVICE

I, David Throesch, do hereby certify that a copy of the above and foregoing pleading has been served on the U. S. Attorney, 111 South 10th St., Suite 20. 333 St. Louis MO, 63102 via Electronic Case Filing on this 14th day of November, 2006.

    /s/ David Throesch
David Throesch,
Attorney for Plaintiff